# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

### *In re Marriage of Mathis*, 2012 IL 113496

---

| | |
|---|---|
| Caption in Supreme Court: | *In re* MARRIAGE OF KENNETH W. MATHIS, Appellant, and TERRI D. MATHIS, Appellee. |
| | |
| Docket No. | 113496 |
| | |
| Filed | December 28, 2012 |
| Rehearing denied | March 25, 2013 |
| | |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a bifurcated proceeding for dissolution of marriage, the date of valuation for marital property is the date the court enters judgment for dissolution following a trial on grounds for dissolution or another date near it. |
| | |
| Decision Under Review | Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of Champaign County, the Hon. Arnold F. Blockman, Judge, presiding. |
| | |
| Judgment | Appellate court judgment reversed.<br>Circuit court order vacated.<br>Cause remanded. |

Counsel on
Appeal

Traci E. Nally, of Nally, Bauer, Feinen & Mann, P.C., of Champaign, for appellant.

Sarah B. Tinney, of Erwin, Martinkus & Cole, Ltd., of Champaign, for appellee.

Justices

JUSTICE THEIS delivered the judgment of the court, with opinion.

Justices Freeman, Karmeier, and Burke concurred in the judgment and opinion.

Justice Garman dissented, with opinion, joined by Chief Justice Kilbride and Justice Thomas.

## OPINION

¶ 1      This case presents a certified question for interlocutory review (see Ill. S. Ct. R. 308 (eff. Feb. 26, 2010)) from the Champaign County circuit court:

> "In a bifurcated dissolution [of marriage] proceeding, when a grounds judgment has been entered, and when there is a lengthy delay between the date of the entry of the grounds judgment and the hearing on ancillary issues, is the appropriate date for valuation of marital property the date of dissolution or a date as close as practicable to the date of trial of the ancillary issues?"

¶ 2      The appellate court decided that the latter date was appropriate, pursuant to section 503(f) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/503(f) (West 2010)). 2011 IL App (4th) 110301. For the reasons that follow, we reverse and remand for further proceedings.

¶ 3                                    BACKGROUND

¶ 4      Kenneth and Terri Mathis married in 1977 and had three children in the 1980s. On November 2, 2000, when the children were 16, 14, and 11 years old, Kenneth filed a petition for dissolution of marriage, and within weeks Terri filed a response. On March 26, 2001, Kenneth filed a stipulation in which he stated that the marriage was irretrievably broken, and asserted that he wished to obtain a judgment of dissolution without proof of fault. Kenneth also waived the statutory requirement that the parties live apart for two years. See 750 ILCS 5/401(a)(2) (West 2010). Terri filed a stipulation in which she too waived that requirement. That day, the trial court held a hearing on whether grounds for dissolution existed. The court's docket entry stated:

> "Cause called for hearing on the issue of whether grounds for the dissolution of the parties' marriage exist. *** Witness sworn. Evidence heard.

-2-

Finding by the Court that the parties have waived the two year separation requirement. Stipulation waiving such requirement on file. Further finding that the parties have lived separate and apart for a period in excess of six months, that irreconcilable differences have caused the irretrievable breakdown of the parties' marriage, that attempts at reconciliation have failed, and that future attempts are impracticable. Based upon the aforesaid finding the parties are awarded a judgment of dissolution of marriage. Ancillary issues are reserved for future consideration. Written judgment order on grounds to be entered."

¶ 5    The cause proceeded from continuance to continuance for the remainder of 2001 and the majority of 2002. On October 23, 2002, a year and a half after the trial court's docket entry, Kenneth filed a "Motion for Entry of Judgment of Dissolution of Marriage (Grounds Only)," in which he mentioned the trial court's earlier finding that there were grounds for dissolution. Kenneth stated that the parties had been separated for approximately two years and had entered into a temporary joint parenting agreement. He further stated that the parties each had a "significant other," with whom they resided when they were not occupying the former marital residence during parenting time. Kenneth announced that he and his significant other had discussed marriage, and would have become engaged but for Terri's objection to the entry of a judgment of dissolution. Terri filed an answer, not a response, to this motion, in which she admitted or denied various statements in the motion paragraph by paragraph. On November 19, 2002, the trial court held a hearing on Kenneth's motion, and on its own motion continued the case. A month later, that hearing resumed. The trial court denied Kenneth's motion on December 18, 2002.

¶ 6    On March 17, 2003, the trial court entered a family law pretrial order, which set discovery cutoffs and scheduled a hearing on ancillary issues after six months. On September 3, 2003, Kenneth filed a second motion for the entry of a dissolution judgment on grounds only. The second motion was similar to the first motion. Kenneth reiterated the trial court's finding that there were grounds for dissolution on March 26, 2001. He stated that the parties' parenting agreement was tendered to the court, and the court had determined that the agreement was in the children's best interest. Kenneth noted that Terri objected to the entry of a judgment of dissolution, but claimed that this case was ongoing only because of the amount of discovery her expert business evaluator had requested. On September 8, 2003, the trial court vacated its pretrial order, and on September 9, it entered an amended pretrial order, which set new discovery cutoffs and scheduled a hearing on "all financial" issues, including the value of Kenneth's businesses and partnerships, on April 6-7, 2004. The trial court did not rule on Kenneth's motion.

¶ 7    On April 6, 2004, the trial court held a hearing on those issues. The next day, after noting that this case had been filed in November 2000 and stating that "these parties really need to get on with their lives," the court on its own motion continued the hearing for five months, until September 2004. On August 26, 2004, the court entered an order titled, "Judgment of Dissolution of Marriage (Ancillary Matters Reserved)." In that order, the trial court simply repeated its docket entry that "irreconcilable differences have caused the irretrievable breakdown of the marriage" and that "efforts at reconciliation have failed and future attempts at reconciliation would be impracticable." The court noted that the parties agreed to reserve

ancillary issues and bifurcate the proceedings.

¶ 8 The September 2004 hearing on the ancillary issues was continued, and on September 2, 2004, the trial court entered a second amended pretrial order, which again set new discovery cutoffs and scheduled a hearing on ancillary issues for January 24, 2005. On December 20, 2004, the parties filed a joint motion to continue that hearing. The trial court granted their motion and vacated that date. On April 19, 2005, the trial court ordered the case continued generally.

¶ 9 On November 4, 2005, Kenneth filed a motion *in limine* to establish the valuation date for marital property. Relying on a long line of Illinois cases, he argued that the valuation date should be the date of the judgment of dissolution, and any evidence regarding the value of the marital property after that date was not probative and should be excluded. On December 30, 2005, both parties filed memoranda of law regarding the valuation date. The parties disputed whether, under section 503(f), the valuation date was the date of dissolution or the date of trial on ancillary matters. The trial court took that issue under advisement.

¶ 10 On February 1, 2006, nearly two years after its written order on dissolution and nearly five years after its docket entry on dissolution, the trial court entered a written order regarding, *inter alia*, the valuation date. The trial court stated that section 503(f) is unambiguous. According to the court:

"It seems *** that section 503(f) is obviously designed to protect the appreciation in value of marital property (or to require a sharing of any depreciation) when there is a lengthy delay between the entry of a grounds judgment and the actual hearing on ancillary issues ***. The objective of the Act is to equitably divide marital property. That can only be done by using current values."

For support, the trial court relied on a treatise and a practice guide. See 1 H. Joseph Gitlin, Gitlin on Divorce: A Guide to Illinois Matrimonial Law § 8-13(i) (2007); Muller Davis & Jody Meyer Yazici, Illinois Practice of Family Law, at 263 (5th ed. 2002). The trial court concluded that the valuation date should be January 1, 2006. The court felt that date was within its discretion because it was "within the confines of the beginning of the ancillary proceedings and whenever the proceedings will be completed, probably later in the year."

¶ 11 The trial court's optimism was not rewarded, as the parties engaged in more discovery, and more discovery disputes. They next returned to court in August 2007 to enter a stipulation regarding termination of child support for their youngest child, who by then had reached age 18. On August 30, 2007, the trial court entered an order to that effect. The next document in the record is a notice of hearing from Terri's attorney dated March 31, 2010.[1] The attorneys for the parties appeared in court on May 7, 2010, and the cause was continued for a hearing on ancillary issues after six months. On October 4, 2010, Terri filed a motion to change the valuation date. She requested that the court set the date no earlier than December 31, 2009. The significance of that date is not apparent from the record, because it fell within the extended period in which the parties did not appear in court and had no

---

[1]There is a docket entry for February 3, 2010, but on that date the parties did not appear in court. Instead, someone filed a transcript of a hearing on a discovery dispute.

hearings scheduled. The next day, Kenneth filed a motion to reconsider the valuation date. He asked that the court set the date as August 26, 2004.

¶ 12 On November 16, 2010, the trial court held a hearing on all pending motions. On December 3, 2010, the trial court ordered that the valuation date for the businesses and partnerships partially owned by Kenneth would be December 31, 2010, and the valuation date for all other marital property would be "as close as practicable to the first date of any continued ancillary hearing." On December 14, 2010, Kenneth filed a motion for a Rule 308 finding. On February 11, 2011, the court granted that motion in an oral ruling. On March 24, 2011, the court entered a written order, certifying the question regarding the appropriate valuation date.

¶ 13 The appellate court answered the certified question, holding that, under section 503(f), the appropriate valuation date in a bifurcated proceeding is the date of trial on ancillary matters. 2011 IL App (4th) 110301, ¶ 21. The appellate court rejected Kenneth's argument that the phrase "date of trial" in section 503(f) was ambiguous. According to the court,

> "Section 503 does not distinguish dissolution-of-marriage proceedings that are addressed all in one trial from those addressed in multiple trials. Moreover, section 503 addresses only the disposition of property and has nothing to do with the grounds for a dissolution. Thus, the only reasonable interpretation of section 503(f) is that it is referring to the trial in which the property distribution is to be decided." *Id.* ¶ 11.

¶ 14 The appellate court disagreed with Kenneth that setting the valuation date after the dissolution date would yield a windfall to the spouse who did not make an effort to increase the value of marital property. The court turned to other provisions of the Dissolution Act, including section 503(b)(1), which states that the presumption of marital property does not apply to property acquired by a spouse after the date of the dissolution; section 503(c), which addresses the treatment of commingled marital and nonmarital property; and section 503(d)(1), which requires the trial court to consider each party's contribution to any increase or decrease in the value of marital or nonmarital property. *Id.* ¶ 14. According to the appellate court, "The aforementioned provisions provide a framework for the trial court to distribute the parties' property in a manner that takes into account appreciation of marital property due to postdissolution efforts." *Id.*

¶ 15 The appellate court also disagreed with Kenneth's suggestion that setting the valuation date after the dissolution date would create perverse incentives:

> "[U]sing any other date not connected to the trial on the issue of property distribution is more likely to produce an anomalous result. If one uses an earlier date and the assets have decreased in value, then the trial court is distributing assets that no longer exist, creating an unenforceable order. [Citation.] Moreover, if the property appreciates in value without any effort by either party, it creates a windfall to the lucky party that receives that property in the distribution. We recognize property values can change between the trial and the actual date of judgment. However, any such changes would likely be smaller than another date that was farther removed from the judgment." *Id.* ¶ 18.

The appellate court acknowledged that its holding disregarded "long existing case law,"

including *In re Marriage of Rossi*, 113 Ill. App. 3d 55 (1983). *Id.* ¶ 19. The court observed that the legislature added section 503(f) some 10 years after that case was decided. *Id.* The court further observed, "[I]n the current economic climate, assets are just as likely to decrease in value as to increase, and courts cannot distribute assets that no longer exist." *Id.*

¶ 16 Justice Appleton wrote a special concurrence, discussing the implications of the court's decision in future cases.

> "Where, as apparently in this case, the parties have substantial assets and business interests, the answer to the certified question may serve to create a new level of gamesmanship in the resolution of a divorce proceeding. Given that the proper evaluation of diverse business assets is a very time-consuming process and the discovery needed to test those valuations consumes even more time, the value of the marital estate can, and likely will, change (sometimes dramatically) while this process plays out. Of course, that will require a whole new round of valuations.

> Many judges will refuse to enter a 'grounds only' judgment of dissolution for this reason. However, there are some cases where the entry of a 'grounds only' judgment is necessary due to the personal circumstances of the parties. Even in a case without such special circumstances, the trial court must have the ability to determine a final valuation date to force resolution of the proceedings, as we have held here, recognizing 'as close to the trial date as practicable' is a flexible concept the trial court can use as the specifics of the case before it requires." *Id.* ¶¶ 25-26 (Appleton, J., specially concurring).

¶ 17 We allowed Kenneth's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Feb. 26, 2010).

¶ 18                                    ANALYSIS

¶ 19 Supreme Court Rule 308 provides for an interlocutory appeal of a nonfinal order that presents "a question of law as to which there is substantial ground for difference of opinion." Ill. S. Ct. R. 308(a). When the trial court finds that an answer to that question "may materially advance the ultimate termination of the litigation," the court must identify the question in writing, and the appellate court may allow an appeal. *Id.* Because an interlocutory appeal under Rule 308 necessarily involves a question of law, our review of the appellate court's decision in such an appeal is *de novo*. *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 58 (2007).

¶ 20 Though the trial court's certified question does not mention section 503(f), the appellate court's answer focused upon that statute. Accordingly, our analysis begins with familiar principles of statutory construction. The primary aim of statutory construction is to determine the legislature's intent, beginning with the plain language of the statute. *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 180 (2011). When the language is clear, our task is simple: we must give it effect as it was written and enacted. When the language is ambiguous, and capable of more than one reasonable interpretation (see *People ex rel. Department of Public Aid v. Smith*, 212 Ill. 2d 389, 397 (2004)), our task becomes more complex. In that case, we must go beyond the statute itself and engage so-called extrinsic aids to construction. We may

-6-

consider the purpose of the statute, as well as the policy concerns that led to its passage. See *People v. Collins*, 214 Ill. 2d 206, 214 (2005). We may also consider the statute's context, reading the provision at issue in light of the entire section in which it appears and the Act of which that section is a part. *Pappas*, 242 Ill. 2d at 180; *People v. Jones*, 214 Ill. 2d 187, 193 (2005) ("The statute should be read as a whole and construed so that no part of it is rendered meaningless or superfluous."). We turn to the statute.

¶ 21     Section 503(f) provides:

> "(f) In a proceeding for dissolution of marriage or declaration of invalidity of marriage or in a proceeding for disposition of property following dissolution of marriage by a court that lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of the property, the court, in determining the value of the marital and non-marital property for purposes of dividing the property, shall value the property as of the date of trial or some other date as close to the date of trial as is practicable." 750 ILCS 5/503(f) (West 2010).

Thus, in any dissolution proceeding the valuation date for marital property is the date of trial or another date near it.

¶ 22     Kenneth argues that the phrase "the date of trial" is ambiguous. According to Kenneth, when dissolution proceedings have been bifurcated under section 401(b) of the Act (see 750 ILCS 5/401(b) (West 2010)), there are two trials—a trial on grounds for dissolution and a later trial on any reserved ancillary issues. As Kenneth notes, the trial court made a docket entry dissolving the parties' marriage on March 26, 2001, entered a written order to that effect on August 26, 2004, and conducted various hearings on other matters throughout the past 12 years. Kenneth asserts that any of these dates could be the date of trial under section 503(f). Terri responds that "the date of trial" is not ambiguous because section 503(f) is part of section 503, which concerns "Disposition of property." Thus, Terri asserts, the date of trial is the date of trial on property disposition.

¶ 23     Because the Act does not define the term "trial," we may consult a dictionary to reveal its plain meaning. *People v. Perry*, 224 Ill. 2d 312, 330 (2007). The term "trial" means "the formal examination of the matter in issue in a cause before a competent tribunal for the purpose of determining such issue." Webster's Third New International Dictionary 2439 (1993). A trial includes "all proceedings from the time when the parties are called to try their cases in court or from the time when issue is joined to the time of its final determination." *Id.* That is, a trial includes a hearing or hearings, as well as a decision. See Black's Law Dictionary 1644 (9th ed. 2009) (defining a trial as "[a] formal judicial examination of evidence and determination of legal claims in an adversary proceeding"). Indeed, in *In re Marriage of Cohn*, 93 Ill. 2d 190, 198 (1982), we described a bifurcated proceeding as one in which there is "a judgment of dissolution of marriage that reserves the remaining issues for later trial." Here, the hearing on grounds for dissolution, the trial court's written judgment of dissolution several years later, and all the hearings on ancillary matters seem to satisfy that definition. Section 503(f), however, uses the definite article "the" to denote a single date. We must decide which date the legislature intended.

¶ 24     Since section 503(f) was enacted in 1992, only the appellate court here has held that in

a bifurcated proceeding the valuation date under the statute is the date of trial on property distribution. 2011 IL App (4th) 110301, ¶ 21. Our appellate court has otherwise held that in a bifurcated proceeding the valuation date is the date of dissolution. See *In re Marriage of Awan*, 388 Ill. App. 3d 204, 209 (2009); *In re Marriage of Cutler*, 334 Ill. App. 3d 731, 737 (2002) ("The Illinois Marriage and Dissolution of Marriage Act clearly stipulates that all marital assets must be valued as of the date of the dissolution of the marriage."). *Awan* and *Cutler* are part of a long and consistent line of cases, beginning with *Rossi*, that have reached that conclusion. See *Rossi*, 113 Ill. App. 3d at 60; *In re Marriage of Brooks*, 138 Ill. App. 3d 252, 260 (1985); *In re Marriage of Rubinstein*, 145 Ill. App. 3d 31, 35 (1986); *In re Marriage of Stone*, 155 Ill. App. 3d 62, 72 (1987); *In re Marriage of Pittman*, 212 Ill. App. 3d 99, 103 (1991); *In re Marriage of Morrical*, 216 Ill. App. 3d 643, 645 (1991); *In re Marriage of Hagshenas*, 234 Ill. App. 3d 178, 192 (1992); *In re Marriage of Weiler*, 258 Ill. App. 3d 454, 460-61 (1994). The rule in these cases mirrors the rule in other cases involving nonbifurcated proceedings. See *In re Marriage of Frazier*, 125 Ill. App. 3d 473, 476 (1984); *In re Marriage of Suarez*, 148 Ill. App. 3d 849, 859 (1986); *In re Marriage of Courtright*, 155 Ill. App. 3d 55, 59 (1987); *In re Marriage of Jones*, 187 Ill. App. 3d 206, 217 (1989); *In re Marriage of Phillips*, 229 Ill. App. 3d 809, 822 (1992); *In re Marriage of Brenner*, 235 Ill. App. 3d 840, 846 (1992); *In re Marriage of Claydon*, 306 Ill. App. 3d 895, 900 (1999); *In re Marriage of Donovan*, 361 Ill. App. 3d 1059, 1964 (2005); *In re Marriage of Wojcik*, 362 Ill. App. 3d 144, 152 (2005); but see *In re Marriage of Benkendorf*, 252 Ill. App. 3d 429, 443 (1993) (holding that the trial court in a nonbifurcated proceeding did not abuse its discretion in setting the valuation date on the last date of trial, rather than the date of the judgment of dissolution seven months later); *In re Marriage of Asher-Goettler*, 378 Ill. App. 3d 1023, 1033 (2008) (holding that the trial court in a nonbifurcated proceeding erred in setting the valuation date on the date of separation, rather than the date of trial).

¶ 25    When the statute was enacted, the legislature was aware of some of these cases. After it became effective, the legislature became aware of the others. Over the past 20 years, the General Assembly has amended section 503 at least 10 times, but has not changed section 503(f). We assume not only that the General Assembly acts with full knowledge of previous judicial decisions, but also that its silence on this issue in the face of decisions consistent with those previous decisions indicates its acquiescence to them. See *People v. Villa*, 2011 IL 110777, ¶ 36 ("the judicial construction of the statute becomes a part of the law, and the legislature is presumed to act with full knowledge of the prevailing case law and the judicial construction of the words in the prior enactment").

¶ 26    But the near-unanimous weight of authority is not supported simply by legislative acquiescence; it is supported by other provisions of section 503, as well as strong policy considerations inherent in the Act as a whole. The rationale of *Rossi* and its progeny is that once the parties are divorced, the property they acquire is no longer marital property. Section 503(a) defines nonmarital property (750 ILCS 5/503(a) (West 2010)), and section 503(d) instructs the trial court to divide marital property in "just proportions" (750 ILCS 5/503(d) (West 2010)). Indeed, the purpose of section 503 is to facilitate an equitable distribution of marital property (see *Kujawinski v. Kujawinski*, 71 Ill. 2d 563, 573 (1978)) not nonmarital property. Accordingly, section 503(b)(1) provides that "all property acquired by either spouse

after the marriage and *before a judgment of dissolution* \*\*\* is presumed to be marital property." (Emphasis added.) 750 ILCS 5/503(b)(1) (West 2010). A judgment of dissolution terminates the parties' marriage, but it also terminates this presumption. As the appellate court noted in *Frazier*, 125 Ill. App. 3d at 476:

> "Marital property \*\*\* must be valued as of the date of dissolution of the marriage. [Citation.] This is so that spouses may be granted an interest in property which is acquired during the marriage or increases in value by the infusion of marital funds or efforts, without receiving an interest in assets of the other spouse which are acquired or appreciate after dissolution. [Citation.] Marital property rights cannot inure in property acquired after a judgment of dissolution of marriage [citation], and the same is true of the appreciation of marital property occurring after that judgment."

That passage echoes *Cohn*, 93 Ill. 2d at 199, where we noted that one of the complications that could arise from bifurcating dissolution proceedings is "the loss of marital-property treatment for property accumulated during the intervening period between the entry of the judgment of dissolution and the final disposition of property rights."

¶ 27 Justice Appleton's special concurrence noted, anecdotally, that many judges refuse to enter a "grounds only" judgment of dissolution because the value of marital property often changes while the parties litigate ancillary issues. 2011 IL App (4th) 110301, ¶¶ 25-26 (Appleton, J., specially concurring). But setting the valuation date after the date of dissolution does not force resolution of the proceedings. To the contrary, it allows the case to drift indefinitely from continuance to continuance, as this case did, with the parties alternatively hoping the undivided marital property either increases or decreases in value before their experts have to testify. Once the trial court dissolves the marriage, the court loses leverage to halt these perverse incentives, unless the valuation date is tied to the dissolution date.

¶ 28 In the appellate court's view, using a valuation date untethered to the date of trial of property distribution is likely to produce an anomalous result, and an unenforceable order if the marital property decreases in value after the date of dissolution. 2011 IL App (4th) 110301, ¶ 18. For support, the appellate court relied upon *In re Marriage of Schinelli*, 406 Ill. App. 3d 991 (2011), but that case is factually distinguishable from the case before us because it did not involve bifurcated proceedings. There, the trial court entered a single order dissolving the parties' marriage and distributing the marital property, including the husband's 401(k) account whose distribution required a subsequent qualified domestic relations order. See 750 ILCS 5/503(b)(2) (West 2010). The issue was whether a decrease in the value of that account should be borne by the husband individually or the parties collectively.

¶ 29 The appellate court stated that placing the entire burden of that loss on the husband was "both unfair and contrary to the judgment of dissolution," which sought an equal overall division of the parties' retirement assets. *Schinelli*, 406 Ill. App. 3d at 1002. The appellate court declined the wife's request that the trial court should reevaluate and redivide all of the parties' retirement assets, including six other accounts. *Id.* at 1003. The court explained, "If the other accounts were considered, the party who managed his or her accounts better during

the market decline would have to subsidize the party who incurred more losses with his or her investment strategy in order to ensure that the accounts continued to be divided equally." *Id.* at 1005. The appellate court ordered that, on remand, the trial court should enter an order consistent with its initial order, awarding the parties the same percentages of the value of that account that they would have received under that order. *Id.* at 1005.

¶ 30       *Schinelli* is not contrary to the rule that the valuation date should be the date of dissolution. While the appellate court's decision in *Schinelli* did not preserve the amounts of the 401(k) account awarded in the initial order, it preserved the percentages awarded, and adhered to the intent of that order by dividing that account equally. Indeed, as the appellate court correctly understood there and here, there are ways to allocate and adjust for postdissolution increases and decreases in the value of marital property to attain a just distribution. See, *e.g.*, 750 ILCS 5/503(c), (d)(1) (West 2010). Rather than adjust later, it is better to divide sooner, based on the value of the property on the date of dissolution. This rule encourages the parties to stop litigating, so they can receive and manage their proportion of the marital property, and discourages gamesmanship because the parties would be on notice that dilatory tactics would not aid either side. Accordingly, we hold that, in a bifurcated dissolution proceeding, the date of valuation for marital property is the date the court enters judgment for dissolution following a trial on grounds for dissolution (see 750 ILCS 5/401(b) (West 2010)) or another date near it. We believe this rule best serves the purpose of and the policy behind the Act, and accordingly the legislature's intent. In the interests of judicial economy and the need to reach an equitable result (see *De Bouse v. Bayer AG*, 235 Ill. 2d 544, 550 (2009)), we vacate the trial court's December 3, 2010, order and direct the court to set the valuation date for marital property as August 26, 2004, the date of its written order dissolving the parties' marriage.

¶ 31       In closing, we recognize that there are certainly cases where the personal circumstances of the parties necessitate bifurcated proceedings. We note, however, that the systematic interests in achieving finality, promoting judicial economy, and avoiding piecemeal litigation will typically militate in favor of resolving all ancillary issues before entering a judgment of dissolution. *Cohn*, 93 Ill. 2d at 197-98; *In re Marriage of Bogan*, 116 Ill. 2d 72, 79-80 (1986); *cf. In re Marriage of Leopando*, 96 Ill. 2d 114, 119 (1983) ("until all the ancillary issues are resolved, the petition for dissolution is not fully adjudicated").

¶ 32       There is simply no discernable reason why this case should still be pending on any issues, now 12 years after the petition for dissolution was filed. The parties, their attorneys, and the trial court all share the blame. Reading between the lines of its docket entries, it seems as though the trial court was against bifurcation, at least until the parties agreed to it. See 750 ILCS 5/401(b)(i) (West 2010) (stating that the trial court may enter a judgment of dissolution that reserves ancillary issues, including property disposition, upon the agreement of the parties). But we encourage the parties and their attorneys, as well as future litigants and their counsel, to remain mindful of the pitfalls associated with bifurcation. As Justice Wright stated in her special concurrence in *Awan*:

          "A bifurcated judgment is not appropriate in all dissolution cases. Counsel must approach an agreed request with great restraint. A bifurcated judgment should not be viewed as a solution to appease clients who are anxious to end a marriage in order

-10-

to advance other significant business or personal endeavors. Nor should a bifurcated judgment proceeding be used as a means to put a difficult dissolution on the back burner, to be addressed on another day. A bifurcated approach may relieve some personal stress on the former spouses, but may inevitably create other more difficult property issues for the trial judge to resolve when a contested hearing cannot be immediately scheduled due to court and counsel's busy calendars.

\* \* \*

Absent an express agreement that another date will control valuation, the parties could have avoided many difficulties in this case by recognizing the court would be required, in spite of the consequences to the parties, to measure all property values as of the date the former spouses were free to remarry, that being the date of the judgment of dissolution." *Awan*, 388 Ill. App. 3d at 218, 220 (Wright, J., specially concurring).

¶ 33 On remand, we expect the parties to find common ground quickly, and new and healthier concerns outside the court system and the disputes that have plagued them for 12 years.

¶ 34                                                CONCLUSION

¶ 35 For the reasons that we have stated, we reverse the appellate court's judgment, vacate the order of the circuit court, and remand the cause to the circuit court for further proceedings.

¶ 36 Appellate court judgment reversed.

¶ 37 Circuit court order vacated.

¶ 38 Cause remanded.

¶ 39 JUSTICE GARMAN, dissenting:

¶ 40 Several years elapsed between the judgment of dissolution of the Mathis's marriage and the trial on ancillary issues. During that time, the value of their marital and nonmarital property may have changed significantly. The circuit court concluded that it should value the property as of the date of the trial on ancillary matters, stating that the statutory objective of equitable division of marital property could be achieved only by using "current values."

¶ 41 The certified question in this case requires us to decide whether in a bifurcated proceeding the statutory phrase "date of trial" in section 503(f) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/503(f) (West 2010)) refers to the hearing on grounds for dissolution or the hearing at which evidence of the value of property is taken.

¶ 42 The appellate court rejected the ex-husband's argument that this language is ambiguous (2011 IL App (4th) 110301, ¶ 19), and held that the proper valuation date for marital and nonmarital property in a bifurcated dissolution proceeding is the "date of trial on the property-distribution matter or some other date as close to the date of that trial as is practicable" (*id.* ¶ 21).

¶ 43 I agree with the appellate court's holding and, therefore, respectfully dissent.

¶ 44    Absent agreement of the parties, the division of property upon dissolution of marriage is a multistep process. The spouses must inventory their property, which must then be classified as marital or nonmarital. 750 ILCS 5/503(a) (West 2010). Both marital and nonmarital property must then be valued (750 ILCS 5/503(f) (West 2010)) and the value of both marital and nonmarital property taken into consideration by the court in equitably dividing the marital property (750 ILCS 5/503(d) (West 2010)).

¶ 45    In a bifurcated proceeding, the determination of whether a particular asset is marital or nonmarital (750 ILCS 5/503(a) (West 2010)), or of the effect of commingling of the spouses' property (750 ILCS 5/503(c) (West 2010)), necessarily utilizes the date of the judgment of dissolution as the applicable *classification* date, because the parties cease accumulating marital property once their marriage is dissolved and each party begins accumulating separate property or remarries and begins to accumulate marital property with a new spouse.

¶ 46    Section 503(f) of the Act governs the *valuation* of property:

> "In a proceeding for dissolution of marriage or declaration of invalidity of marriage or in a proceeding for disposition of property following dissolution of marriage by a court that lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of the property, the court, in determining the value of the marital and non-marital property for purposes of dividing the property, shall value the property as of the date of trial or some other date as close to the date of trial as is practicable." 750 ILCS 5/503(f) (West 2010).

¶ 47    Section 503(d) governs the *division* of marital property:

> "In a proceeding for dissolution of marriage or declaration of invalidity of marriage, or in a proceeding for disposition of property following dissolution of marriage by a court which lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of the property, the court shall assign each spouse's non-marital property to that spouse. It also shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors ***." 750 ILCS 5/503(d) (West 2010).

¶ 48    Sections 503(d) and 503(f) expressly contemplate bifurcated proceedings when the court lacks jurisdiction to divide property at the time the judgment of dissolution is entered. Similarly, sections 504(a) and 505(a) specifically mention bifurcation of the issues of maintenance and child support in "a proceeding *** following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse." 750 ILCS 5/504(a), 505(a) (West 2010).

¶ 49    Section 401(b) of the Act specifically allows bifurcated proceedings in circumstances other than lack of personal jurisdiction:

> "Judgment shall not be entered unless, to the extent it has jurisdiction to do so, the court has considered, approved, reserved or made provision for child custody, the support of any child of the marriage entitled to support, the maintenance of either spouse and the disposition of property. The court may enter a judgment for dissolution that reserves any of these issues either upon (i) agreement of the parties, or (ii) motion of either party and a finding by the court that appropriate circumstances

exist." 750 ILCS 5/401(b) (West 2010).

¶ 50    As a result, while a judgment of dissolution may be entered, allowing the parties to remarry and terminating the acquisition of marital property as of that date, it is sometimes necessary for questions of child custody and support, maintenance, and property division to be decided at a later date. Unfortunately, as the present case illustrates, the delay can be so lengthy that circumstances change between the judgment of dissolution and the decisions on these issues. A child whose support was in dispute may have entered college; a spouse who might have been eligible for maintenance on the date the dissolution order was entered may have obtained employment; or a piece of marital property may have been lost or destroyed, or have increased or decreased in value.

¶ 51    The majority concludes that the phrase "date of trial" in section 503(f) is ambiguous because the dictionary definition of the word "trial" could apply to the hearing on grounds for dissolution or to the later hearings on ancillary matters. *Supra* ¶ 23. The majority notes that all reported appellate court decisions prior to the present case have held that the proper valuation date is the date of the judgment of dissolution. *Supra* ¶ 24. In addition, the majority states that this reading of the statute is supported by reliance on the doctrine of legislative acquiescence (*supra* ¶ 25) and is consistent with other provisions of section 503 (*supra* ¶ 26). The majority notes the concern that setting the valuation date at a date after the entry of the judgment of dissolution may create an incentive for one party to prolong the litigation. *Supra* ¶ 27.

¶ 52    While I agree with the majority that the word "trial" in section 503(f) is ambiguous, because it is reasonably capable of more than one meaning (see *Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433, 440 (2010)), I conclude that the parties' marital and nonmarital property should be valued as of the date of the trial on that issue or on a date as near as practicable to that date. Section 503(f), when read in conjunction with related sections of the Act, demonstrates that the legislature intended for marital and nonmarital property to be valued as of a date as close as possible to the date on which the court divides the property between the parties. Further, this reading is a more practical and fair way to proceed than the majority's reading.

¶ 53                              Evolution of the Statutory Scheme

¶ 54    As a result of Public Act 80-293, the Illinois Marriage and Dissolution of Marriage Act became effective on October 1, 1977. Section 401(3) of the Act provided that a judgment of dissolution:

> "shall not be entered unless, to the extent it has jurisdiction to do so, the court has considered, approved, reserved or made provision for child custody, the support of any child of the marriage entitled to support, the maintenance of either spouse and the disposition of property." Ill. Rev. Stat. 1977, ch. 40, ¶ 401(3).

¶ 55    Section 503, dealing with disposition of property, was also enacted as part of the original version of the Act and became effective on October 1, 1977. Section 503(c) provided for both unified and bifurcated proceedings, but did not contain any language regarding the time at which the property was to be valued:

"In a proceeding for dissolution of marriage or declaration of invalidity of marriage, or in a proceeding for disposition of property following dissolution of marriage by a court which lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of the property, the court shall assign each spouse's non-marital property to that spouse. It also shall divide the marital property without regard to marital misconduct in just proportions ***." Ill. Rev. Stat. 1977, ch. 40, ¶ 503(c).

¶ 56    Thus, at the time the Act went into effect, there was a "disconnect" between these two sections. Section 401(3) allowed dissolution with reservation of ancillary issues, but section 503(c) referred to subsequent separate proceedings for disposition of property only when the dissolution was granted in the absence of jurisdiction to resolve the property issue.

¶ 57    The appellate court interpreted section 401(3) in *In re Marriage of Cohn*, 94 Ill. App. 3d 732 (1981), as requiring that the court make a specific finding of appropriate circumstances before entering an order of dissolution that reserved an issue for later decision. The appellate court enumerated four circumstances in which bifurcation would be appropriate. *Id.* at 739-40.

¶ 58    After the appellate court filed its decision in *Cohn*, but before this court affirmed that judgment, the legislature enacted Public Act 82-197, effective August 14, 1981, which substituted the word "may" for "shall" in section 401(3) and allowed the court to bifurcate a judgment for dissolution and to reserve certain questions:

> "The court may bifurcate the judgment for dissolution and reserve questions of child custody, the support of any child of the marriage entitled to support, the maintenance of either spouse and the disposition of property *regardless of whether* i) the court has in personam jurisdiction over the respondent, or ii) one of the parties would be unable to pay child support or maintenance if so ordered, or iii) the court has set aside an adequate fund for child support pursuant to subsection (d) of Section 503, or iv) the child or children of the parties do not reside with either parent." (Emphasis added.) Pub. Act 82-197 (eff. Aug. 14, 1981).

¶ 59    In effect, the new language gave the circuit court the discretion that the appellate court had determined did not exist under the previous language. Indeed, this amendment was enacted in direct response to the appellate court's holding in *Cohn*, for the purpose of reversing the result in that case. See *In re Marriage of Cohn*, 93 Ill. 2d 190, 201-02 (1982).

¶ 60    This court held in *In re Marriage of Cohn* that section 401(3) was not intended to give the circuit court "unfettered discretion" to bifurcate dissolution proceedings. *Id.* at 199. According to the historical and practice notes to section 401(3), this section was intended to allow reservation of these issues "in appropriate circumstances." *Id.* at 197 (citing Ill. Ann. Stat., ch. 40, ¶ 401(3), Historical & Practice Notes, at 105 (Smith-Hurd 1980)). Such circumstances include, but are not limited to, "[w]here the court does not have *in personam* jurisdiction over the respondent; where a party is unable to pay child support or maintenance if so ordered; where the court has set aside an adequate fund for child support pursuant to section 503(d) of the Act; or where the parties' child or children do not reside with either parent." *Id.* at 199. This court held that because there was "nothing in the record [to reveal] that the trial court gave any consideration to the question of whether there was a need to

-14-

reserve disposition" of ancillary matters, there was no "justification at all for entering a judgment of dissolution and continuing the matter" for disposition of the ancillary issues. *Id.* at 199-200. Thus, the wife's motion to vacate the judgment of dissolution should have been granted. *Id.* at 207. In its opinion, which affirmed the appellate court's judgment, this court listed the same four "appropriate circumstances" that would justify bifurcation under section 401(3). *Cohn*, 93 Ill. 2d at 199-200. With regard to the amended statute, this court held that the new language could be given effect only prospectively. *Id.* at 207.

¶ 61   A subsequent amendment to section 401(3) by Public Act 83-247 changed the word "may" back to "shall," and replaced the second sentence with:

"The court may enter a judgment for dissolution which reserves any such issues either upon (a) agreement of the parties, or (b) motion of either party and a finding by the court that appropriate circumstances exist." Pub. Act 83-247 (eff. Sept. 9, 1983) (amending Ill. Rev. Stat. 1983, ch. 40, ¶ 401(3)).

(Section 401(3) was renumbered as section 401(b) by Public Act 83-954 (eff. July 1, 2004).)

¶ 62   In *In re Marriage of Bogan*, 116 Ill. 2d 72 (1986), this court addressed the question of "appropriate circumstances" for bifurcation under section 401(b) in the absence of the agreement of the parties and held that although the 1983 amendment authorizes bifurcation upon agreement of the parties, it otherwise "basically restored the original version of the statute" (*id.* at 79), and thus this court's interpretation of the phrase "appropriate circumstances" in *Cohn* (*id.* at 79-80). Because the husband had failed to demonstrate that appropriate circumstances existed for bifurcation, the judgment of dissolution was reversed. *Id.* at 80-81.

¶ 63   The language of section 401(b) has remained unchanged since 1983. See 750 ILCS 5/401(b) (West 2010).

¶ 64   Although the question of the timing of valuation of property in a bifurcated proceeding had never been addressed by this court, the separate issue of classification of property was alluded to in *Cohn* and *Bogan* in terms of the inequities and complications that could arise from bifurcation:

" '[T]he court could likely be required to adjudicate marital-property rights that have become entangled with the supervening rights of third parties, including subsequent spouses. Additionally, entering a judgment of dissolution prior to property disposition would complicate, rather than simplify, matters with respect to the rights of a surviving spouse in the event of an intervening death. Other complications that can ensue if a judgment of dissolution is not deferred until disposition of the other matters include the loss of ability to file joint income tax returns, the loss of medical insurance coverage, and the loss of marital-property treatment for property accumulated during the intervening period between the entry of the judgment of dissolution and the final disposition of property rights.' " *Bogan*, 116 Ill. 2d at 80 (quoting *Cohn*, 93 Ill. 2d at 199).

¶ 65   As this recounting of the evolution of the statutory scheme illustrates, although bifurcation had been allowed under some circumstances since 1977, it was not until 1993 that the Act contained any specific language regarding the time of valuation of the parties'

property. As a result, any cases dealing with the question of the timing of valuation that were decided prior to 1993 were not based on statutory interpretation of the applicable language.

¶ 66                                The *Rossi* Line of Cases

¶ 67    The seminal case dealing with the time of valuation is *In re Marriage of Rossi*, 113 Ill. App. 3d 55 (1983). The circuit court entered the judgment of dissolution in 1979 and its memorandum opinion on the property division and maintenance issues in 1981. *Id.* at 56. The property at issue was a business of which the husband was 100% shareholder, which the circuit court valued at $600,000. *Id.* at 57. The appellate court was "unable to discern whether the trial court considered evidence subsequent to" the date of the judgment of dissolution, but noted that the "facts existing on the valuation date should be the only ones taken into account." *Id.* at 60. Finding remand necessary because the valuation methods used by the wife's expert were not proper (*id.* at 61-62), the court stated that the proper valuation date for the stock would be the date of the judgment of dissolution. "To hold otherwise would have the effect of treating appreciation of the corporation subsequent to the dissolution as marital property contrary to section 503(c)(3) of the Act." *Id.* at 60.

¶ 68    This reasoning conflates the questions of classification of property as marital or nonmarital and valuation of both types of property. The *Rossi* court referred to section 503(c)(3) of the Act as requiring valuation at the time of dissolution, but this section merely provides that one of the "relevant factors" to be considered in the division of marital property is the "duration of the marriage." Ill. Rev. Stat. 1981, ch. 40, ¶ 503(c)(3). It says nothing about the time of valuation. Because of these flaws in its reasoning and the subsequent enactment of section 503(f), I find *Rossi* to be of little significance, despite its having been cited repeatedly by the appellate court in the years since.

¶ 69    In *Rossi*, a corporation was determined to be marital property. To properly divide the parties' property, the court would have needed to know its value as of the date of dissolution and its value as of the date of division. Further, it would have needed to know whether any increase in value was attributable to the postdissolution efforts of either spouse. If an increase in value had resulted from the husband's postdissolution efforts, then the value on the date of dissolution would have been marital property subject to division, and the incremental increase in value would have been the husband's nonmarital property. The marital portion of the value would have been divided after consideration of all relevant factors. Ill. Rev. Stat. 1981, ch. 40, ¶ 503(c).

¶ 70    If, however, an increase in value of the marital asset had resulted from passive market forces, that increased value should have been divided between the two spouses, as neither one would have earned it by his or her own efforts after the date of dissolution. Similarly, if a marital asset, such as a home, decreased in value as a result of the collapse of the real estate market, the court would have to know the value of the asset as of the date of trial on the property division issue or some other date as close to the date of that trial as practicable (750 ILCS 5/503(f) (West 2010)), in order to make an equitable division of property.

¶ 71    *In re Marriage of Frazier*, 125 Ill. App. 3d 473 (1984), illustrates this point although this was not a bifurcated proceeding. The husband was an insurance agent and the circuit court

properly classified the agency, which he had acquired during the marriage, as marital property. *Id.* at 474. The court valued the agency at $144,000, based on the "capitalization of earnings" valuation method used by the wife's expert witness. *Id.* at 475. The appellate court held that this method was inappropriate for valuation of the insurance agency because it relied on a discounted value of a predicted future stream of earnings, which might never materialize and which would be the result of the husband's postdissolution efforts. *Id.* The court stated that the agency, as marital property, "must be valued as of the date of dissolution of the marriage." *Id.* at 476 (citing *Rossi*, 113 Ill. App. 3d at 60). "This is so that spouses may be granted an interest in property which is acquired during the marriage or increases in value by the infusion of marital funds or efforts, without receiving an interest in assets of the other spouse which are acquired or appreciate after dissolution." *Id.* "Marital property rights cannot inure in property acquired after a judgment of dissolution of marriage [citation], and the same is true of the appreciation of marital property occurring after that judgment." *Id.* The error in *Frazier* that required remand for further proceedings was that the expert "purported to place a value on the agency as of the time of trial," but he used a method that relied on reducing the husband's future earnings to present cash value, ignoring the fact that the future earnings would be "due in large part" to the husband's efforts following dissolution. *Id.* at 476-77.

¶ 72        Thus, to properly divide a marital asset, the court must know the value of the asset as of or on a date as close as possible to the date of division of property. This is a separate question from how much of that value should be classified as marital property and how much should be classified as nonmarital property. Because *Frazier* was a nonbifurcated proceeding, the date of dissolution and the date of property division were the same. If the proceedings had been bifurcated, any increase in the value of the agency between the date of dissolution and the date of property division would have been the husband's separate property if due to his postdissolution efforts.

¶ 73        However, the court needs to know both numbers—the value of the asset as of the date marital property ceased to accumulate and the value of the asset as of the date of division—to be able to properly assign nonmarital property to each spouse and to divide marital property in light of the relevant factors. If, however, the marital asset is a bond or other investment that continues to increase in value after the judgment of dissolution without any effort by either spouse, the entire value of the asset as of the date of trial on the property issue is marital property and should be divided as such.

¶ 74        *Rossi* and six of the other cases cited in the majority opinion for the "long and consistent line of cases" concluding that the proper date of valuation is the date of the dissolution (*supra* ¶ 24), were decided prior to 1993, when the valuation language in section 503(f) became effective. None of these opinions makes a distinction between the date of classification of property as marital or nonmarital—which must be the date of dissolution—and the date of valuation of both marital and nonmarital property—which, if the value of the property has changed, must be as near as possible to the date of division.

¶ 75        In *In re Marriage of Brooks*, 138 Ill. App. 3d 252 (1985), the court cited *Rossi* for the proposition that "the date of valuing marital assets is the date the judgment of dissolution was entered." *Id.* at 260 (citing *Rossi*, 113 Ill. App. 3d at 68). The parties did not dispute the

-17-

applicability of this rule. Rather, the husband argued that the valuation of a closely held corporation was inaccurate because it failed to take into account certain debts of the corporation. *Id.* at 261. The appellate court determined that because he had taken out a $338,000 bank loan and a $100,000 mortgage on the property subsequent to the dissolution, the value of the asset as of the date of dissolution was the proper valuation. *Id.* In effect, the husband's postdissolution transactions diminished the value of a marital asset. The appellate court was correct that the loss of value between the time of dissolution and the time of division should have been borne by the husband who incurred the debts.

¶ 76        However, this does not support a general rule in all bifurcated cases that property should be valued at the date of dissolution. In order to properly assign nonmarital property to each spouse and to equitably divide marital property in light of relevant factors, the court must know the value of the property as of the date of division and, if there has been a significant change in value between the date of dissolution and that date, whether that change is due to the actions of one spouse or to market or other forces.

¶ 77        Similarly, *In re Marriage of Rubinstein*, 145 Ill. App. 3d 31 (1986), does not bolster the logic of the *Rossi* rule. In this case, the husband's medical practice, which was determined to be a marital asset, was valued by the circuit court as of a date nine months prior to the dissolution. *Id.* at 35. When the appellate court cited *Rossi* and other cases for the proposition that "the trial court should value the marital property of the parties as of the date of the judgment dissolving the marriage of the parties" (*id.*), it did so in the context of a premature valuation. See also *In re Marriage of Weiler*, 258 Ill. App. 3d 454 (1994) (circuit court erred in valuing husband's profit-sharing plan, a marital asset, as of nine months prior to the judgment of dissolution rather than on the date of dissolution, thus failing to consider contributions made by husband and his employer while the marriage was still intact). Neither of these cases involved a dispute over marital property that changed in value between the date of dissolution and the date of the trial on division of property.

¶ 78        In *In re Marriage of Pittman*, 212 Ill. App. 3d 99 (1991), the circuit court awarded the wife one-half of the balance of several bank accounts that were determined to be marital property, although after the dissolution the accounts were held in the names of the husband and his son. In making this division, the court used a bank statement that was dated one year after the judgment of dissolution was entered. *Id.* at 103. Because neither party presented evidence as to the balances of these accounts at the time of the dissolution, the court remanded the issue to the trial court. *Id.*

¶ 79        What the *Pittman* court failed to consider was that if all of the funds in these accounts as of the date of dissolution were marital funds and if they earned interest between the date of dissolution and the date of the property division, that interest amount would have been marital property subject to division. If, however, the balance in an account increased after the date of dissolution because the husband deposited his own nonmarital funds into the account, the increased amount would not have been subject to division.

¶ 80        In several other cases, the general rule of *Rossi* was repeated, but because the parties disputed how the value of certain property was calculated rather than the timing of valuation, the rule was not applied. See, *e.g.*, *In re Marriage of Stone*, 155 Ill. App. 3d 62 (1987)

(parties put on evidence as to value of marital home and husband's share of law partnership as of date of dissolution; issues on appeal were actual valuations); *In re Marriage of Morrical*, 216 Ill. App. 3d 643 (1991) (no issue raised regarding time of valuation of family-owned business; issue was whether circuit court abused its discretion by considering financial statements from earlier years in addition to husband's more current financial statements to determine value of the asset); and *In re Marriage of Hagshenas*, 234 Ill. App. 3d 178 (1992) (spouses testified to their opinions as to the value of a business at time of dissolution; issue on appeal was the valuation itself, not timing of valuation).

¶ 81    Thus, since *Rossi* was decided in 1983, the statement that valuation must be made as of the date of the judgment of dissolution has been repeated in case after case, without distinguishing between the separate questions of classification of property as marital or nonmarital and valuation of property for the purpose of making an equitable division. Aside from *Brooks*, the rule has never been applied in a circumstance where a significant change in value of a marital asset has occurred in the interval between the judgment of dissolution and even in that case, the court did not distinguish between changes in value that are attributable to the actions of one of the spouses and changes due to passive earnings or market forces.

¶ 82    The appellate court has considered the valuation issue only twice since the words "as of the date of trial or some other date as close to the date of trial as is practicable" were added to section 503(f). 750 ILCS 5/503(f) (West 2010).

¶ 83    The issue in *In re Marriage of Cutler*, 334 Ill. App. 3d 731 (2002), was whether the circuit court's valuation of a closely held corporation was against the manifest weight of the evidence because it was based on an expert valuation that was "clearly inapplicable" to this type of business. *Id.* at 736-37. The court stated that the Act "clearly stipulates that all marital assets must be valued as of the date of the dissolution of the marriage." *Id.* at 737 (citing 750 ILCS 5/503 (West 2000), and *Frazier*, 125 Ill. App. 3d at 476).

¶ 84    However, the Act did not then and does not now "clearly stipulate" that in a bifurcated proceeding all marital assets must be valued as of the date of dissolution. As the majority acknowledges, the statutory language is ambiguous and must be construed, but the *Cutler* court made no effort to interpret the actual language of section 503(f), which was enacted 10 years after the *Rossi* decision and 9 years after *Frazier*.

¶ 85    Further, the valuation in *Cutler* would have been improper no matter which date of valuation was used because the "capitalization of earnings" method relied on predictions of the husband's future earnings and "would necessarily include as marital property labor which would be performed subsequent to the dissolution." *Id.*

¶ 86    The most recent appellate court case dealing with valuation of property in a bifurcated proceeding is *In re Marriage of Awan*, 388 Ill. App. 3d 204 (2009). On appeal, the wife argued that the circuit court erred by valuing marital property as of the date of the dissolution. *Id.* at 206. She attempted to evade the oft-repeated rule that marital property should be valued as of the date of dissolution by arguing that under this court's holding in *In re Marriage of Leopando*, 96 Ill. 2d 114, 120 (1983), the issues in a dissolution are not separate claims and, therefore, are not separately appealable. *Id.* at 209. Thus, she argued,

-19-

because the judgment of dissolution in a bifurcated proceeding is merely a preliminary order, valuing the property as of the date of trial necessarily means valuing it as of the date of the hearing on the property issues. The appellate court held that the dissolution order is a valid order and that "reservation of issues does not render the judgment of dissolution nonfinal." *Id.* at 210. Thus, this court's holding in *Leopando* did not support her argument that the property should be valued as of the date of the hearing on property division.

¶ 87    *Awan* provides no support for interpreting section 503(f) one way or the other, because, like *Cutler*, it contains absolutely no discussion of the language of section 503(f). *Awan* merely rejected the ex-wife's argument based on her misreading of *Leopando*.

¶ 88    The present case is the first case in which this court has been asked to determine whether, in a bifurcated proceeding where the value of a marital asset has changed significantly between the judgment of dissolution and the division of property, the value of the property should be determined as of the date of the judgment of dissolution or the date of the hearing on the property issue. It is our responsibility to answer this question of first impression before this court and to interpret the statute *de novo*. To determine the answer to this question, we must look beyond a line of appellate court cases (see *supra* ¶ 24) that merely repeated a rule that has never been considered by this court. We must examine the language of section 503(f) in light of the Act as a whole. Before doing so, however, I note that I am not persuaded by the majority's reliance on the doctrine of legislative acquiescence. *Supra* ¶ 25.

¶ 89                              Legislative Acquiescence

¶ 90    Our *de novo* review of a question of statutory interpretation that is a matter of first impression before this court is not constrained by the canon of construction known as the "doctrine of legislative acquiescence." This court has described the doctrine as a " 'weak reed on which to base a determination of *** drafters' intent.' " *People v. Marker*, 233 Ill. 2d 158, 175 (2009) (quoting *People v. Marker*, 382 Ill. App. 3d 464, 491 (2008) (O'Malley, J., dissenting)). We have also noted that legislative acquiescence is a "jurisprudential principle; it is not a rule of law." *People v. Perry*, 224 Ill. 2d 312, 331 (2007).

¶ 91    Further, the doctrine "presumes that the legislature amends a statute with knowledge of judicial decisions interpreting the statute." *Hubble v. Bi-State Development Agency of the Illinois-Missouri Metropolitan District*, 238 Ill. 2d 262, 273 (2010). As the majority notes (*supra* ¶ 25), "the judicial construction of the statute becomes a part of the law, and the legislature is presumed to act with full knowledge of the prevailing case law and the judicial construction of the words in the prior enactment." *People v. Villa*, 2011 IL 110777, ¶ 36. See also *Blount v. Stroud*, 232 Ill. 2d 302, 324 (2009) ("Where the legislature chooses not to amend a statute after a judicial construction, it will be presumed that it has acquiesced in the court's statement of the legislative intent." (internal quotation marks omitted)). Thus, the doctrine is implicated only when the legislature amends a statute that has previously been interpreted by the court and, in doing so, does not alter the existing judicial interpretation.

¶ 92    In the present case, the statutory language that we must interpret was enacted in 1992 and became effective in 1993. None of the cases decided by the appellate court prior to that time interpreted the statutory language at issue and, thus, we cannot presume that the legislature

amended section 503 in 1992 with knowledge of the existing judge-made rule, because that rule was untethered to the language of the statute.

¶ 93     Further, when the legislature amended section 503(f) in 1992 to add the "time of trial" language, it neither codified nor abrogated the judge-made rule of *Rossi* that had been repeated, if not applied, in subsequent appellate court decisions. Rather, the legislature amended the statute to specifically instruct courts on the valuation date for some bifurcated proceedings, but not for others. This hardly suggests conscious acquiescence by the lawmakers. Rather, it suggests that when the "time of trial" language was added, the legislature gave no thought at all to cases that were bifurcated pursuant to section 401(b) rather than as a result of lack of jurisdiction.

¶ 94     For these reasons, the doctrine of legislative acquiescence, whatever its merits in other contexts, is of no assistance in the present case because in 1992 there were no judicial interpretations of statutory language to which the legislature might have acquiesced. The present case is the first one in which a court has been asked to interpret the language of section 503(f) to determine whether, in a bifurcated proceeding, marital property is to be valued as of the time of dissolution or the time of the hearing on the issue.

¶ 95                                   Reading the Act as a Whole

¶ 96     Section 503(f), which governs the valuation of property, expressly acknowledges the existence of two types of proceedings: "a proceeding for dissolution of marriage or declaration of invalidity of marriage" and "a proceeding for disposition of property following dissolution of marriage by a court that lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of the property." 750 ILCS 5/503(f) (West 2010). The language regarding *ex parte* proceedings, where personal jurisdiction over an absent spouse is lacking, or proceedings in which the court lacks jurisdiction to dispose of property specifically tracks the language of section 503(c) and 503(d), which govern the classification and distribution of property, respectively. 750 ILCS 5/503(c), (d) (West 2010). Thus, sections 503(c), (d), and (f) expressly contemplate bifurcated proceedings when the bifurcation is necessitated by a lack of jurisdiction. In such cases, "the court, in determining the value of the marital and non-marital property for purposes of dividing the property, shall value the property as of the date of trial or some other date as close to the date of trial as is practicable." 750 ILCS 5/503(f) (West 2010).

¶ 97     Section 503, however, does not speak to the situation where bifurcation is the result of the agreement of the parties, or is granted upon motion by one party and a finding of appropriate circumstances. 750 ILCS 5/401(b) (West 2010).

¶ 98     This gap in the legislative scheme can be resolved in two ways. The majority chooses to treat a dissolution bifurcated pursuant to section 401(b) differently from those that must be bifurcated as a result of lack of jurisdiction. In the first category of cases, property is to be valued as of the date of the judgment of dissolution, even though the value of marital property may change between that date and the date of the trial on ancillary issues. In the second category of cases, property is to be valued as of the date of the hearing on that matter. The majority offers no explanation for this inconsistent treatment of the same specific issue,

based merely on the reason for bifurcation.

¶ 99    In my opinion, the gap should be resolved by treating a case that is bifurcated by agreement or upon motion in the same manner as a case that is bifurcated as a result of lack of jurisdiction. Although the legislature has not amended section 503 to list the two additional circumstances for bifurcation authorized by section 401, there is no reason to believe that it intended for the valuation provision to apply to a separate "proceeding for the disposition of property" when it was occasioned by an earlier *ex parte* dissolution, but not when it was the result of an agreement of the parties or the motion by one party.

¶ 100   Thus, marital property should be valued as of the date of the trial on that issue. To the extent that the value has changed since entry of the judgment of dissolution, the court should consider whether the increase in value is the result of the postdissolution effort of one of the spouses and should take that fact into consideration when assigning each "spouse's non-marital property to that spouse" and when dividing "the marital property without regard to marital misconduct in just proportions considering all relevant factors." 750 ILCS 5/503(d) (West 2010). Similarly, if an asset has declined in value in the interim, the court should consider whether the loss in value is attributable to the conduct of one of the spouses. If not, the spouses should share the burden of the loss.

¶ 101   The majority, however, finds its reading of section 503(f) supported by sections 503(a) and 503(d). *Supra* ¶ 26. Section 503(a) defines marital and nonmarital property and specifically states that property acquired after dissolution is nonmarital. 750 ILCS 5/503(a) (West 2010). The *classification* of property as marital or nonmarital under section 503(a) is entirely consistent with my reading of section 503(f) and has no bearing whatsoever on the *valuation* of property.

¶ 102   Under my interpretation of section 503(f), the value of an asset that is classified as marital property as of the date of the dissolution may, between that date and the date of division of property, decrease, remain the same, or increase. If the value does not change, it will not matter which date is used to determine its value. If the value has decreased or increased, the court should consider whether the change is attributable to the conduct of either spouse before assigning each spouse his or her separate property and equitably dividing the marital property.

¶ 103   The majority does not mention sections 504(a) and 505(a), which contain virtually identical language to section 503(f). Section 504(a) governs the granting of maintenance based on consideration of relevant factors in a proceeding for dissolution or declaration of invalidity or in "a proceeding for maintenance following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse." 750 ILCS 5/504(a) (West 2010). Like section 503(f), this section expressly mentions bifurcated proceedings following an *ex parte* judgment of dissolution, but does not mention bifurcation for other reasons pursuant to section 401(b). Although section 504(a) does not specifically provide for consideration of the factors at the time of the later maintenance proceeding, it seems clear that the factors must be considered as of the time of the proceeding, not as of the time of the earlier dissolution judgment. If the income, needs, or earning capacity of either spouse (750 ILCS 5/504(a)(1), (2), (3) (West 2010)) has changed in the interim, that person's current

situation should be used to determine whether maintenance is appropriate.

¶ 104    Similarly, section 505(a) directs the court in "a proceeding for child support following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse" to consider the age and number of children to determine the percentage of income of the parent's income to be paid as child support. 750 ILCS 5/505(a) (West 2010). Again, this calculation necessarily utilizes the facts as they exist on the date of the child support proceeding. If a child has reached the age of majority, or a child has been born since the judgment of dissolution, or the payor spouse's income has changed, these facts are relevant to the calculation of child support in the subsequent proceeding.

¶ 105    When read as a whole, the Act provides for bifurcated proceedings whether necessitated by lack of jurisdiction over an absent spouse, agreed to by the parties, or granted by the court upon motion by one party. The Act as a whole suggests that all issues that are reserved for later decision should be treated in the same manner. There is no support in the language of the Act for deciding maintenance and child support issues based on the current set of facts and deciding property division based on a set of facts that no longer exists. Indeed, the maintenance and property issues are inextricably intertwined. A court cannot properly decide the maintenance question based on current facts if it must decide the property issue based on stale facts, because one of the relevant factors for maintenance is the "property of each party, including marital property apportioned and non-marital property assigned to the party seeking maintenance." 750 ILCS 5/504(a)(1) (West 2010).

¶ 106                                    Fairness and Practicality

¶ 107    The majority acknowledges that the purpose of section 503 is to facilitate the equitable division of marital property. *Supra* ¶ 26. However, the approach that I propose is more consistent with the legislature's intent that marital property be equitably divided between the spouses, taking into consideration each person's separate property and other factors. In addition, valuing marital property as of the date of the trial on that issue, while taking into consideration the cause of any increase or decrease in value since the dissolution, is more practical and more fair than turning a blind eye to any change in value.

¶ 108    The majority opinion echoes the concerns of the appellate dissent that valuing property as of the date of the hearing on ancillary issues creates an incentive for either or both parties to prolong the litigation, on the chance that the value of a particular asset might rise or fall. *Supra* ¶ 27. However, this is not a reason to require the court to ignore the current realities of property values when dividing marital property.

¶ 109    It is worthwhile to consider some hypothetical situations. A couple may have two significant assets, the marital home and an investment account, each of which is worth $100,000 as of the date of the dissolution. In the interval between the judgment of dissolution and the property proceeding, the house decreases in value to $90,000 due to a slowing real estate market and the investment account increases in value to $110,000 due to a rising stock market. Assuming that the court has determined that an equal division of property is appropriate, an equal division under the majority's rule would award the house to one spouse and the investment account to the other because each was valued at $100,000 as of the date

-23-

of dissolution. In real terms, however, this is not an equal division. This would be a 45%/55% division. A truly equal division would give one spouse the house plus $10,000 and the other $100,000. To accurately calculate this division, the court would have to have current information on the value of the two assets.

¶ 110    Consider the same couple, where the wife remains in the home after the judgment of dissolution is entered and invests a considerable amount of money to renovate the house. If the funds used to finance the renovation were marital funds withdrawn from a savings account, the entire value of the home at the time of the hearing on property division is marital property subject to division. If, however, the funds used for the renovation were her separate funds, the court should consider both the value of the home at the time of dissolution (which is marital property subject to division) and the incremental increase in value at the time of the hearing on property division (which should be assigned to her as her separate property and considered as a factor in the overall distribution of property). Similarly, if a marital asset has lost value in the interval between dissolution and distribution of property due to the conduct of either spouse, that loss should be considered when dividing marital property, making that spouse bear the burden of the loss he or she caused.

¶ 111    In sum, as a matter of practicality and fairness, equitable distribution would be facilitated by *classifying* the property as marital or nonmarital as of the date of the judgment of dissolution and by *valuing* the property on a date as near as possible to the date on which the court actually divides the property between the parties, taking into account all relevant factors. If either spouse claims that a property has increased in value because of his or her effort, or has decreased in value due to the conduct of the other spouse, the court should hear such evidence and give it due consideration in the division of property.

¶ 112    I conclude that the overall statutory scheme of the Act, particularly sections 401(b), 503(f), 504(a), and 505(a), requires that the parties' property be valued as of the time of the proceeding on property division. This reading is in keeping with the language of section 503(f) and the Act as a whole, and it comports with the legislature's goals of fairness and equity. I, therefore, dissent.


¶ 113    CHIEF JUSTICE KILBRIDE and JUSTICE THOMAS join in this dissent.